461 A.2d 604

**COMMONWEALTH of Pennsylvania, Appellee-Appellant,**

v.

**Dennis VOGEL, Appellant-Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1983.

Decided April 27, 1983.

316

Frederick D. Lingle, Dist. Atty., for appellant at No. 626 and for appellee at No. 627.

Alfred S. Pelaez, Pittsburgh, for appellant at No. 627 and for appellee at No. 626.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

NIX, Justice.

This is a cross appeal from an order entered in a post conviction proceeding pursuant to the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, *as*

*amended; reenacted as* 42 Pa.C.S. §§ 9541–9551, wherein the Commonwealth seeks reversal of the award of a new trial based upon the ineffective assistance of counsel and Mr. Vogel seeks his discharge contending that the constitutional prohibition against double jeopardy requires such a result.[1] For the reasons that follow we hold that the learned court below was in error in concluding that a new trial was warranted. We also are of the view that there is no merit in Mr. Vogel's claimed double jeopardy violations. Hopefully, this matter which arose on August 1, 1962 will at long last be put to rest.

At the outset it must be emphasized that it has never been questioned that Mr. Vogel caused the death of two individuals in the course of a robbery of the store where they were employed. The fruits of that robbery—cash, money bags and green stamps—were secreted in the trunk of his car when he and his family left this country and travelled to Canada shortly after the crime. The crux of the controversy has been whether the record has established his legal culpability for the consequences of this conduct. It is appropriate for us first to consider the asserted double jeopardy violation, for if it is established Mr. Vogel may not be retried and is entitled to an immediate discharge. *Commonwealth v. Meadows,* 471 Pa. 201, 369 A.2d 1266 (1977); *see generally Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

## I. MR. VOGEL'S APPEAL

[1] It is argued on Mr. Vogel's behalf that the convictions in the first and second trials were set aside because of the failure of the prosecution to present sufficient evidence to

1. This Court has jurisdiction pursuant to the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1) (Suppl 1977) (repealed 1978).

establish his guilt of the crimes charged.[2]   It is well settled that the double jeopardy clause of the Federal Constitution, U.S. Const., amend. 5, prohibits a retrial for the purpose of permitting the prosecution a second opportunity to muster sufficient evidence to convict where it failed to do so at the first trial.[3]   *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981);   *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980);   *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978);   *Commonwealth v. Mitchell*, 497 Pa. 14, 438 A.2d 596 (1981).

The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.   This is central to the objective of the prohibition against successive trials.   The Clause does not allow "the State . . . to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."   [Footnote omitted;   citations omitted.]

**2.**   The instant double jeopardy claim was raised for the first time in Mr. Vogel's P.C.H.A. petition.   Mr. Vogel argues that the attorney who represented him at his second and third trials was ineffective in failing to raise a double jeopardy issue at either trial.   It is well established that counsel will not be deemed ineffective for failing to preserve a meritless claim.   *Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154, *cert. denied*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982);   *Commonwealth v. Ciotti*, 496 Pa. 232, 436 A.2d 983 (1981); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).   Since we conclude that the double jeopardy claim is without merit, this ineffective assistance contention cannot be sustained.   Additionally, in view of our conclusion that Mr. Vogel is not entitled to a fourth trial, we need not address the question of whether that trial would violate the Double Jeopardy Clause.

**3.**   Since Mr. Vogel has limited his double jeopardy complaint to an asserted violation of the Federal Constitution, we will not consider the prohibition against double jeopardy as prescribed under the Constitution of this Commonwealth.   *See generally Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978).

*Burks v. U.S., supra,* 437 U.S. at 11, 98 S.Ct. at 2147, 57 L.Ed.2d at 9–10 (1978).

Despite this well-recognized constitutional policy against successive trials for the same offense, the United States Supreme Court candidly admitted that its prior decisions as to whether an appellate court after a finding of insufficiency in the proof was required to bar retrial could not "be characterized as models of consistency and clarity." *Burks v. U.S., supra* at 9, 98 S.Ct. at 2146, 57 L.Ed.2d at 8. *See, e.g., Forman v. United States,* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Sapir v. United States,* 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955); *Bryan v. United States,* 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950). The *Burks* Court, after recognizing a need to reassess its earlier decisions in this area concluded that double jeopardy precludes a retrial once an appellate court has found the evidence legally insufficient.[4] *See also Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

The *Burks* Court was careful to limit its holding to instances where the state had failed to sustain its burden of proof and reaffirmed the validity of *U.S. v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) where the reversal is based upon trial error. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). It is also clear that the holding in Burks is only applicable where the state has had a "fair opportunity to offer whatever proof it could assemble." *Hudson v. Louisiana,* 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30, 33 (1981) *quoting Burks v. U.S., supra* 437 U.S. at 16, 98 S.Ct. at 2150, 57 L.Ed.2d at 12.[5]

**4.** The Commonwealth raises the difficult question as to whether the *Burks* decision must apply to retrials granted and tried prior to that decision. In view of our disposition we need not attempt to anticipate the U.S. Supreme Court on the question of the retroactive application to be given to their *Burks* holding. *But see, Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

**5.** The Court in *Hudson* concluded that where state law permits the trial judge to second guess the jury on the question of guilt, i.e., to serve as the 13th juror, double jeopardy would not preclude retrial.

320

■ The weakness in the argument attempting to equate the *Burks* analysis to the instant appeal is that the two reversals in this case did not result from a legal determination that the evidence ·of the Commonwealth was insufficient to sustain the verdicts of guilt returned by the jury. To the contrary, Mr. Vogel has had the benefit of the metamorphosis in the law of this jurisdiction relating to the proper allocation of the burden of proof of the "sanity" of one who commits a criminal act. The element of "a second bite of the apple" is not in this case. Questions relating to the reallocation of burdens of proof have their underpinnings in the constitutional guarantee of due process. *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Commonwealth v. Moyer,* 466 Pa. 464, 353 A.2d 447 (1976); *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975). This basis for appellate intervention must be distinguished from a finding that the inadequacy of the proof establishes that the matter should never have been submitted to a jury for a determination. *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

Mr. ·Vogel was convicted in his first trial of two counts of murder in the second degree and of armed robbery. On appeal to this Court the judgments of sentence were reversed and a new trial awarded. *Commonwealth v. Vogel [Vogel I]* 440 Pa. 1, 268 A.2d 89 (1970). The order in that appeal was supported by five members of the Court; two members dissented and would have affirmed the judgments of sentence. *See Commonwealth Vogel, supra,* 440 Pa. at 21, 268 A.2d at 96 (Bell, C.J., dissenting, joined by Eagen, J.). Of the members joining the order of reversal, only one member, Mr. Justice, now Chief Justice, Roberts premised his conclusion upon a finding of evidentiary insufficiency. *See Commonwealth v. Vogel, supra,* 440 Pa. at 14, 268 A.2d at 90 (Roberts, J., concurring in Order *Per Curiam* ).

*Hudson v. Louisiana, supra* 450 U.S. at 44 n. 5, 101 S.Ct. at 973 n. 5, 67 L.Ed.2d at 34 n. 5.

Mr. Justice, later Chief Justice, Jones joined by Mr. Justice, later Chief Justice, O'Brien expressly concluded that the Commonwealth's evidence had in fact established the elements of the offenses. *See Commonwealth v. Vogel, supra,* 440 Pa. at 10–11, 268 A.2d at 94 (Jones, J., concurring in Order *Per Curiam,* joined by O'Brien, J.). Adopting the view that sanity was not necessarily an element of the crime, but may relate solely to whether the accused possessed sufficient awareness to be deemed criminally responsible for the conduct, these Justices reached the conclusion that the presumption of sanity alone did not overcome direct and uncontradicted evidence of insanity.

As indicated by the facts in the instant case, legal insanity in this Commonwealth may or may not bear on the question of intent. The prosecution presented ample evidence that Vogel planned his crime, from which evidence intention might be inferred, but no evidence that Vogel could appreciate the character of his actions. An individual may intentionally kill someone, with malice aforethought, but be incapable of distinguishing right from wrong in so doing. Under such circumstances, the elements of murder would be met (*Commonwealth v. Kirkland,* 413 Pa. 48, 195 A.2d 338 (1963)), but the individual's legal insanity would properly necessitate a verdict of not guilty by reason of insanity. This is the type of situation which is demonstrated on the face of the instant record.

*Commonwealth v. Vogel, supra,* 440 Pa. at 10–11, 268 A.2d at 94.

The distinction between a determination of an evidentiary insufficiency in proving an element of the crime and a decision as to the appropriate allocation of the burdens of persuasion and proof to flow from an evidentiary presumption was further reflected in the following observations of Mr. Justice Jones:

I cannot accept the premise that sanity is necessarily an *element* of every crime. To the contrary, I view insanity as being the basis upon which society offers treatment

rather than punishment to one who has committed a crime. [Citation omitted.] Although every element of a crime can be established beyond a reasonable doubt, including the element of intent to do the act, insanity may still be asserted as a defense in Pennsylvania.

*Commonwealth v. Vogel, supra,* 440 Pa. at 11, 268 A.2d at 94 (emphasis in original).

The opinion of Mr. Justice Pomeroy also clearly indicates that his joinder in the order of reversal was as a result of his concern for the proper effect to be given to the "presumption of sanity." *Commonwealth v. Vogel, supra,* 440 Pa. at 17, 268 A.2d at 102 (Pomeroy, J., concurring in Order *Per Curiam*).

To summarize, I believe that the presumption of sanity relieves the Commonwealth of the necessity of establishing the defendant's sanity, unless and until the defendant introduces evidence sufficient to create a reasonable doubt as to the existence of sanity. Such evidence having been here presented, the burden of persuasion that the defendant was sane was in my view properly with the Commonwealth.

*Id.,* 440 Pa. at 21, 268 A.2d at 104.

Thus we must reject Mr. Vogel's contention that the reversal in *Vogel I* was a judicial determination due to a failure of proof at trial where the State had received a fair opportunity to offer whatever proof it could assemble. At least three of the members of the Court joining in the order of reversal did so on the basis of a change in the law as to the effect to be given to the presumption of sanity.[6] Two of the members supporting the order of reversal expressly found that the Commonwealth had presented sufficient evidence to establish a malicious killing and armed robbery.[7] Only one member of the Court in *Vogel I* articulated a view

---

6. Mr. Justice Cohen joined in the order without stating his reasons.

7. It is also to be remembered the two dissenting members would have affirmed the convictions. Thus a majority of the Court in *Vogel I* concluded that the Commonwealth did in fact prove all of the essential elements of the crimes charged.

that would justify the basis of Mr. Vogel's instant argument, assuming arguendo the applicability of *Burks v. U.S., supra. See* note 3, *supra.*

■ The decision of this Court in *Commonwealth v. Vogel, (Vogel II),* 458 Pa. 200, 321 A.2d 633 (1974), also fails to support the position urged. At the second trial appellant was again convicted of all of the charges by a jury. As noted in our *per curiam* opinion in *Vogel II* following the second trial, the trial court granted a motion for a new trial on the ground that the verdicts were against the *weight of the evidence.* The distinction between a determination of the weight of the evidence, which allows the trial court to make an independent assessment of the credibility of the prosecution's case, *see, e.g., Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. Hinchcliffe,* 479 Pa. 551, 388 A.2d 1068, *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978); *Commonwealth v. Jackson,* 457 Pa. 237, 324 A.2d 350 (1974); *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972), and a sufficiency determination, which confines the reviewing tribunal to accepting the evidence produced by the prosecution in the most favorable light, *see, e.g., Commonwealth v. Scudder,* 490 Pa. 415, 416 A.2d 1003 (1980); *Commonwealth v. Smith,* 490 Pa. 329, 416 A.2d 494 (1980); *Commonwealth v. Skarica,* 489 Pa. 636, 414 A.2d 1390 (1980); *Commonwealth v. Joyner,* 489 Pa. 502, 414 A.2d 1003 (1980), is well established. The precise nature of that distinction was cogently stated in *United States v. Lincoln,* 630 F.2d 1313 (8th Cir.1980):

> The court reviewing the sufficiency of the evidence, whether it be the trial or appellate court, must apply familiar principles. It is required to view the evidence in the light most favorable to the verdict, giving the prosecution the benefit of all inferences reasonably to be drawn in its favor from the evidence. The verdict may be based in whole or in part on circumstantial evidence. The evidence need not exclude every reasonable hypothesis except that of guilt. . . .

When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different. . . . The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Id.* at 1316, 1319, *quoted in Tibbs v. Florida, supra,* 457 U.S. at 39, 102 S.Ct. at 2217, 72 L.Ed.2d at 659 (1982).

We have long recognized that an adverse ruling to the prosecution on the question of the weight of the evidence is remedied by the award of a new trial. *See Commonwealth v. Davis,* 477 Pa. 197, 383 A.2d 891 (1978); *Commonwealth v. Meadows,* 471 Pa. 201, 369 A.2d 1266 (1977); *Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 444 A.2d 115 (1982). In contrast, where there is an insufficiency of evidence determination, the only remedy is the discharge of the defendant for the crime or crimes charged. *See Commonwealth v. Flowers,* 479 Pa. 153, 387 A.2d 1268 (1978); *Commonwealth v. Todd,* 477 Pa. 529, 384 A.2d 1215 (1978); *Commonwealth v. Eberle,* 474 Pa. 548, 379 A.2d 90 (1977); *Commonwealth v. Chenet,* 473 Pa. 181, 373 A.2d 1107 (1977).

In *Tibbs v. Florida, supra,* the United States Supreme Court made it clear that a precise understanding of the distinction between the weight and the sufficiency of evidence is crucial in determining whether double jeopardy considerations bar retrial:

*Burks v. United States* and *Greene v. Massey* carved a narrow exception from the understanding that a defendant who successfully appeals a conviction is subject to retrial. In those cases, we held that the Double Jeopardy Clause precludes retrial "once the reviewing court has found the evidence legally insufficient" to support convic-

tion. *Burks, supra,* [437 U.S.] at 18 [98 S.Ct. at 2150]; *Greene, supra,* [437 U.S.] at 24 [98 S.Ct. at 2154]. This standard, we explained, "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Burks, supra,* [437 U.S.] at 16 [98 S.Ct. at 2149] (emphasis original). A conviction will survive review, we suggested, whenever "the evidence and inferences therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt." *Ibid.* See also *Greene, supra,* [437 U.S.] at 25 [98 S.Ct. at 2154]. In sum, we noted that the rule barring retrial would be "confined to cases where the prosecution's failure is clear." *Burks, supra,* [437 U.S.] at 17 [98 S.Ct. at 2150].

So defined, the exception recognized in *Burks* and *Greene* rests upon two closely related policies. First, the Double Jeopardy Clause attaches special weight to judgments of acquittal. A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.

Second, *Burks* and *Greene* implement the principle that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks, supra,* at 11 [98 S.Ct. at 2147]. This prohibition, lying at the core of the Clause's protections, prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance. See *Green v. United States,* 355 U.S. 184, 187–188 [78 S.Ct. 221, 223, 2 L.Ed.2d 199] (1957); *United States v. DiFrancesco, supra,* [449 U.S.] at 130 [101 S.Ct. at 433]. For this reason, when a reversal rests upon the ground that the prosecution has

failed to produce sufficient evidence to prove its case, the Double Jeopardy Clause bars the prosecutor from making a second attempt at conviction.

As we suggested just last Term, these policies do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence. See *Hudson v. Louisiana,* 450 U.S. 40, 44–45 n. 5 [101 S.Ct. 970, 973 n. 5, 67 L.Ed.2d 30] (1981). A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.

A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment.

*Tibbs v. Florida, supra* 457 U.S. at 39–43, 102 S.Ct. at 2217–19, 72 L.Ed.2d at 660–662 (footnotes omitted).

■ In *Vogel II,* in addition to affirming the court's exercise of its discretion in "second guessing" the jury's evaluation of the weight of the evidence, we also justified the award of the new trial because of an intervening change in our view as to the allocation of the burden of proof where a defense is raised by the defendant. *See Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974) (defense of insanity); *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974) (defense of intoxication). However, in both *Vogel I*

and *Vogel II,* it is without question that the prosecution did not fail because of the inadequacy of its evidence to prove Vogel's commission of the crimes charged. In each instance the jury convicted. The judgments of sentence were disturbed only because of an after the fact determination that the "judicial process [was] defective in some fundamental respect. . . ." *Burks v. U.S., supra* 437 U.S. at 15, 98 S.Ct. at 2149, 57 L.Ed.2d at 12. The adjustment of the judicial process, which was the basis for overturning the verdicts of guilt in the first and second trials, was properly achieved in providing Mr. Vogel with a further opportunity "in obtaining a fair readjudication of his guilt free from error" and at the same time accommodated society's "valid concern for insuring that the guilty are punished." *Id.*

American jurisprudence has been immeasurably enriched by its constant effort to refine its process to insure its fairness. This salutary objective would be severely impeded if we were to gratuitously engraft upon it the bar of retrial which would preclude a readjudication of guilt or innocence under the refinement developed. *Commonwealth v. Hogan,* 482 Pa. 333, 393 A.2d 1133 (1978).

> It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.
>
> *U.S. v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

Where double jeopardy concerns, such as an unjust second bite of the apple, are not present we serve no legitimate purpose by attempting to expand the bar of retrial under a misguided sense of "fairness."

The third trial was properly allowed and also resulted in a verdict of guilt. *Commonwealth v. Vogel, (Vogel III),* 468 Pa. 438, 364 A.2d 274 (1976). With our affirmance after a direct appeal, the judgments of sentence became final. *See Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A.2d 249 (1966); *Commonwealth v. Negri,* 419 Pa. 117, 213 A.2d 670 (1965); *Commonwealth ex rel. Wilson v. Rundle,* 412 Pa. 109,

194 A.2d 143 (1963). In affirming the judgments of sentence, this Court concluded that the Commonwealth's evidence satisfied the standard of proof relating to sanity as developed long after the commission of the crime. This case provides a vivid example of an accused being given the benefits of the refinements in our process which he clearly would not have been entitled to nor could he reasonably have expected on the day he committed these heinous acts. The absurdity of an application of double jeopardy considerations, in a situation where the defendant's rights have been scrupulously accorded, is evident. Moreover, we may not ignore the obligation to the citizenry of this Commonwealth to assure that those who violate our laws will be held criminally responsible for the pain and suffering resulting from their behavior.

## II. THE COMMONWEALTH'S APPEAL

It is appropriate at this point in our analysis to turn to the P.C.H.A. court's ruling that yet a fourth trial must be given. The proffered basis for this decision was prior defense counsel's failure to vigorously pursue the motion for change of venue. This collateral attack upon a final judgment of sentence, which has undergone the intense scrutiny uniquely demonstrated in the procedural history of this case, is based upon *the unsupported assumption* that there was justification for the change of venue request.

The collateral attack focused upon the failure of counsel to seek a hearing to establish a record in support of the motion. What has been ignored is that in the post conviction proceedings Mr. Vogel has not provided a record to indicate the evidence that might have been garnered in support of such a position but for the asserted ineffectiveness of counsel.

Much emphasis has been placed upon the size of Clinton County and the prior history of the case. However, it must be remembered that the incident occurred in 1962 and the third trial took place in 1974. *Cf. Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971); *Commonwealth v.*

*Swanson,* 432 Pa. 293, 248 A.2d 12 (1968); *cert. denied,* 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969); *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967), *vacated on other grounds,* 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968). It also must be remembered that at the two previous trials in 1968 and 1971 a change of venue was sought and rejected. Mr. Vogel has failed to demonstrate that there was more basis for the success of such a motion at the third trial than existed at the time of the first and second trials. Most importantly, it is to be noted that the defense exercised only twelve peremptory challenges of the twenty allotted in a case of this nature. *See* Act of March 6, 1901, P.L. 16, § 1, *as amended,* 19 P.S. § 811 (repealed 1978; *see now* Pa.R.Crim.P. 1126). Absent a complaint that counsel was ineffective in selecting an unbiased jury, *see, e.g., Commonwealth v. Johnson,* 490 Pa. 312, 416 A.2d 485 (1980); *Commonwealth v. Faison,* 437 Pa. 432, 264 A.2d 394 (1970), it must be presumed that the jury selected to serve during the third trial was in fact deemed capable by the defense of rendering a fair and impartial verdict. *See Commonwealth v. Hoss,* 469 Pa. 195, 364 A.2d 1335 (1976); *Commonwealth v. Shadduck,* 168 Pa.Super. 376, 77 A.2d 673 (1951).

Finally, even if we accept as inadequate counsel's reasons for failing to pursue the motion for change of venue with more vigor, that fact alone would not justify a disturbance of a final judgment absent a further showing that the asserted dereliction deprived Mr. Vogel of a fair trial. *See Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Commonwealth v. Hoss, supra.* This was certainly not a situation that would justify a presumption of prejudice. *Cf. Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209, *cert. denied,* 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973).

Accordingly, the Order of the post conviction hearing court denying relief on double jeopardy grounds is affirmed;

that part of the Order awarding a new trial is reversed and the judgments of sentence are reinstated.

ROBERTS, C.J., concurs in the result.